# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CALVIN A. ABRAM,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| vs. | ] |
| | ] CASE NO. 2:04-CV-2739-VEH |
| **BIRMINGHAM REGIONAL** | ] |
| **PLANNING COMMISSION, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OF OPINION

I.  Introduction.

The Court has for its consideration defendant Birmingham Regional Planning Commission's (hereinafter referred to as the "Commission") motion for summary judgment (doc. 20) filed August 25, 2005, and defendant Tommy Stuart's motion for summary judgment (doc. 25) filed August 29, 2005.  Plaintiff Calvin A. Abram filed suit against the Commission, Stuart, and the State of Alabama Department of Human Resources (hereinafter referred to as the "Department") alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause.  (doc. 1). Following the Court's December 10, 2004, Order (doc. 13) granting in part and denying in part motions to dismiss filed by the Department (doc. 7) and Stuart (doc.

10),[1] the following claims remain for resolution: Abram's causes of action for race discrimination and retaliation against the Commission; Abram's cause of action for race discrimination against Stuart in his individual capacity; and Abram's § 1981 cause of action for retaliation against Stuart in his individual capacity.[2] Subsequently, Plaintiff has indicated that he no longer intends to pursue a retaliation claim against the Commission.[3] The issues raised in Defendant Stuart's motion for summary

---

[1]As part of its December 10, 2004, Order, the Court dismissed the Department as a party and concluded that Abram failed to state a claim by alleging that Stuart, in both his official and individual capacities, unlawfully retaliated against Abram for complaining of Stuart's alleged racial harassment. The Court *sua sponte* reconsidered that conclusion and vacated the Order to the extent that the Court concluded that Abram's allegations of retaliation failed to state a claim under 42 U.S.C. § 1981. (doc. 14). Accordingly, Abram's claim of retaliation under § 1981was reinstated against Stuart in his individual capacity.

[2]By his motion, (doc. 27) Defendant Stuart also moves for summary judgment on the ground that Abram was not subjected to a racially hostile work environment. Upon reviewing the Plaintiff's complaint, however, the Court cannot find where such a claim has been alleged. Accordingly, this opinion does not address Defendant's hostile work environment argument.

[3]In Plaintiff's Opposition to Defendant's Motions for Summary Judgment, Mr. Abram states that he "signed an Employment Agreement that provided that [the Commission] offers no recourse in the event that [the Department of Human Resources] terminates [Plaintiff's] employment. As such, Plaintiff concedes that [the Commission] was not involved in his termination." (doc. 28 at 1). To establish a claim of discrimination based upon retaliation, Plaintiff must establish a *prima facie* case of discrimination under the four-part framework of *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir. 1993) ("The burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 (1973). *E.E.O.C v. Total Sys. Services, Inc.,* 221 F.3d 1171 (11th Cir. 2000); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993) ("The burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 (1973)."), *reh'g denied and reh'g en banc denied*, 16 F.3d 1233 (11th Cir. 1994). Specifically, Plaintiff must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment action. *Maniccia v. Brown*, 171 F.3d 1364, 1369

judgment have been fully briefed by both parties and are now ripe for decision. Upon full consideration of the legal arguments and the evidence presented, Defendants' motions are due to be **GRANTED** in all respects.

II.    Facts.[4]

Calvin A. Abram was hired to work at Jefferson County Department of Human Resources through an Interagency Agreement between the Commission and the Department. Over the course of his employment, Abram received several verbal and written reprimands for such transgressions as excessive visitation and violation of certain work rules. On one occasion, Abram's supervisor, Tommy Stuart, met with Abram to discuss appropriate work attire. Specifically, Stuart attempted to explain to Abram why employees were not permitted to wear t-shirts containing emblems. During the discussion, Stuart cited past instances in which black employees had

---

(11th Cir. 1999) (citing *Little v. United Techs*, 103 F.3d 956, 959 (11th Cir. 1997)). Because Plaintiff's retaliation claim arises out of Plaintiff's termination and Plaintiff admits that the Commission was not involved in his termination, Plaintiff cannot establish a causal connection between the protected activity and the adverse employment action as it relates to the Commission. Accordingly, Plaintiff's retaliation claim against the Commission is due to be and is hereby dismissed.

[4] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. V. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

offended co-workers by wearing t-shirts associated with Black Nationalist leader Malcolm X. As an analogy, Stuart explained that white employees were similarly prohibited from wearing shirts containing the confederate flag. Believing Stuart's comments to be discriminatory in nature, Abram memorialized this conversation on November 21, 2003.

Shortly thereafter, Abram suffered an on-the-job injury. On December 15, 2003, Abram reported to work and presented Stuart with a note, stating that Abram would be on medical leave for three weeks. According to Stuart, upon learning that Abram would be on leave for the remainder of the year, Stuart asked Abram to complete two assignments before leaving for the day. Abram testified that Stuart presented him with one claim, and only assigned Abram the second claim after Abram had completed the first. In either case, it is undisputed that Abram did not complete the second claim. When Stuart inquired as to why Abram had failed to complete the second claim, Abram returned to his office, threatened to "write [Stuart] up," and left the building without completing the task. Stuart informed Program Manager James Kilgore about the December 15 incident and suggested that Abram could be terminated for such an offense. Plaintiff submitted a second written complaint regarding Stuart. Upon returning to work on January 8, 2004, Abram received a

written warning for excessive visitation resulting in uncompleted work related to the December 15 incident.

Following Abram's return, Abram missed some or all of many days in January and February. In late February 2004, Kilgore asked Stuart to request medical excuses from Abram for the days on which Abram had missed work. While Abram contends that he provided all the requested documentation, according to Stuart, Abram provided only verbal responses, which Stuart reported to Kilgore. On or about February 27, 2004, Plaintiff contends, Plaintiff threatened to report his complaints about Stuart to the Equal Employment Opportunity Commission. Kilgore ultimately terminated Plaintiff's employment on March 2, 2004.

At all times relevant to this matter, Abram was supervised by Defendant Stuart, who reported to Program Supervisor Sarah Schrimsher, who, in turn, reported to Mr. Kilgore. As a front-line supervisor, Stuart supervises the work of employees who investigate and process food stamp claims. Stuart does not have the authority to hire and fire employees, but he does have the discretion to discipline employees with written warnings for violation of work rules or poor performance. Prior to being hired, Abram was interviewed only by James Kilgore. Tommy Stuart did not interview or hire Abram, and only learned from Kilgore that Abram had been hired.

III.  Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with

positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

IV.    Discussion.

Although Abram alleges claims of race discrimination and retaliation in his complaint, Plaintiff only opposes Defendant Stuart's motion for summary judgment on his retaliation claim.

In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11 Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11 Cir. 1990). Rather, the onus is upon the parties to formulate arguments …[G]rounds alleged in the complaint, but not relied upon in summary judgment are deemed abandoned." *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11 Cir. 1994) (citations omitted).

Because Plaintiff did not include any facts or argument to support his race discrimination claim in his Opposition to Defendant's Motion for Summary Judgment, Plaintiff's race discrimination claim is deemed abandoned, and Defendant is entitled to summary judgment on that claim.

Plaintiff's only remaining claim is that, in violation of 42 U.S.C. § 1981, Stuart terminated Plaintiff in retaliation for complaining of race discrimination and threatening to file an EEOC charge. Stuart contends that Abram has failed to establish

a *prima facie* case of discrimination because he is unable to show that the defendant took an adverse employment action against him. Furthermore, Stuart avers that he has offered a legitimate, non-retaliatory reason for recommending Abram for termination. Stuart argues that Plaintiff cannot rebut his asserted reasons for recommending Abram's termination or produce evidence sufficient to establish that Stuart was motivated by discriminatory animus. Finally, Stuart argues that he is immune from suit for his discretionary act of recommending that the plaintiff be terminated.

    A.    42 U.S.C. § 1981 Claim.

The analysis for claims arising under § 1981 mirrors the analysis for Title VII. *See Standard v. ABEL Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("The same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981."). A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination. *Id*. Plaintiff has relied on circumstantial evidence in an effort to prove his case. In evaluating claims supported by circumstantial evidence, courts apply the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination. *Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the plaintiff has met the *prima facie* case requirement, the defendant must then "rebut by offering a legitimate, non-discriminatory reason for the allegedly discriminatory act." *Id.* This burden is "exceedingly light . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* at 725 (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). Assuming the defendant successfully rebuts the plaintiff's claim, "the presumption of discrimination is eliminated," and the burden returns to the plaintiff to produce evidence sufficient to permit a reasonable factfinder to conclude that the reasons for the adverse employment action as articulated by the employer were a mere pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") If the plaintiff fails to produce such evidence or fails to establish a *prima facie* case of racial discrimination altogether, the employer is entitled to summary judgment on the plaintiff's claim, assuming no other

evidence of discrimination exists. *Cooper*, 390 F.3d at 725 (citing *Chapman v. AL Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

        1.     *Prima Facie* Case

To establish a claim of discrimination based upon retaliation, Plaintiff must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment action. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing *Little v. United Techs*, 103 F.3d 956, 959 (11th Cir. 1997)).

Stuart does not dispute that Abram engaged in a protected activity by complaining of alleged discriminatory treatment on November 21, 2003, or the fact that Abram suffered an adverse employment action as a result of his March 2, 2004 termination. Defendant Stuart argues, however, that because Department Manager James Kilgore, and not Stuart, implemented Abram's discharge, Stuart cannot be held liable under § 1981 because Stuart did not in fact take an adverse action against Abram. As a result, Defendant contends, Plaintiff cannot establish a causal link between Stuart's alleged discriminatory animus and Plaintiff's termination.

As a front-line supervisor, Stuart did not have the authority to hire or fire Abram. He did, however, have the discretion to discipline Abram with written warnings for violation of work rules or poor performance. It is undisputed that Stuart

recommended to Kilgore that Abram be terminated following the December 15, 2003 incident. While, according to Stuart, Kilgore indicated that he "wouldn't deal with it right then" because Plaintiff "was off on medical leave," (doc. 29; Exhibit 2), Kilgore did ultimately terminate Abram's employment.

> A discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge. *Zaklama v. Mt. Sinai Medical Center*, 842 F.2d 291, 294 (11th Cir. 1998). However . . . this causation must be truly direct. When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity. Instead the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee. *Llampallas*, 163 F.3d at 1248. One way of proving that the discriminatory animus behind the recommendation caused the discharge is under the "cat's paw" theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus. *Id*. at 1249.

*Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999);

Plaintiff here asserts that the causal relation element of his *prima facie* case is met due to the close temporal proximity between the protected activity and the adverse action. Specifically, Plaintiff contends that:

> Plaintiff made a written complaint on or about November 21, 2003. (Exhibit 4). He complained again in writing on January 2, 2004. (Exhibit 5). Plaintiff then threatened to go to the EEOC on February 27, 2004. (Exhibit 6). Plaintiff was terminated on March 2, 2004. (Abram depo., p. 154). There is no dispute that Stuart recommended to Kilgore that Plaintiff be terminated after Plaintiff's complaints were made and before his termination. (Stuart depo., p. 33). Hence, the close temporal proximity of Plaintiff's complaints and his subsequent termination are indicative of retaliation.

(doc. 28 at 15).

Even assuming, however, that a reasonable jury could find discriminatory animus on the part of Stuart in recommending that Abram be terminated, Plaintiff has not introduced any evidence to show that Stuart's alleged discriminatory animus influenced Kilgore's decision to terminated him. Furthermore, Abram has not introduced any evidence to show that Kilgore acted as a "cat's paw" or rubber stamp for Stuart's recommendation. To the contrary, as Defendant Stuart states, "since Kilgore has not testified in this matter through deposition or affidavit, the record is void of evidence of the reason Kilgore terminated Abram." (doc. 27 at 24). Although Plaintiff contends that the lack of evidence from Kilgore does not establish that Kilgore *did not* consider Stuart's recommendations when he terminated Plaintiff, it is well-settled that the burden to present a *prima facie* case is on the plaintiff. Consequently, the onus is on Abram to produce sufficient evidence to establish causation between Stuart's recommendation and Kilgore's decision to terminate him.

As Abram has failed to adduce such evidence, Plaintiff has failed to establish a causal link between Stuart's alleged discriminatory animus and his termination and thus cannot make out a *prima facie* case of retaliation.[5]

        2.     Legitimate Non-Discriminatory Reasons.

Even assuming, however, that Mr. Abram had introduced evidence that could reasonably indicate that Stuart's allegedly discriminatory animus influenced Kilgore's decision to terminate Plaintiff, Plaintiff has not offered "'significant probative evidence' on the issue [of pretext] to avoid summary judgment." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996). Specifically, Plaintiff has not established that the legitimate reason advanced by Stuart for recommending that Abram be terminated is really a pretext for discrimination.[6]

---

[5] Relying upon the holding in *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989), Plaintiff notes that the motivations of all employees in the decision-making process are relevant in a claim for disparate treatment discrimination. Plaintiff has not, however, alleged a claim of disparate treatment. Rather, Plaintiff Abram asserts that he was terminated in retaliation for complaining of race discrimination and threatening to file an EEOC charge. As noted above, in a claim for discrimination based on retaliation where the recommender and the decisionmaker are not the same party, a plaintiff must prove that the recommender did in fact influence the other party's decision to terminate the employee. Accordingly, notwithstanding the holding in *Jones*, had Stuart been motivated by racial animus, Stuart could nonetheless not be held liable for Kilgore's termination decision because Abram has failed to produce evidence to suggest that Stuart contributed to that decision.

[6] As discussed in the text, Plaintiff cannot show that Defendant Stuart's recommendation directly resulted in Plaintiff's discharge. For this reason, Plaintiff cannot establish a causal link between Stuart's alleged discriminatory animus and Plaintiff's termination, and Plaintiff has not presented a *prima facie* case. Moreover, Defendant Stuart pointed to evidence explaining the recommendation that Plaintiff's employment be terminated was based on the fact that Abram had committed a terminable offense and Plaintiff has not shown that this reason is pretextual.

For the foregoing reasons, Mr. Abram has failed to establish a *prima facie* case of discrimination based on retaliation because Plaintiff has not shown the existence of a causal link between Stuart's alleged discriminatory animus and Kilgore's decision to terminate Plaintiff. Summary judgment is therefore due to be **GRANTED** with respect to Plaintiff's claim that he was discharged in retaliation for complaining of race discrimination.

B. Qualified Immunity.

Even if Stuart had contributed to Abram's termination, Stuart is entitled to qualified immunity for his discretionary decisions to discipline Abram. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*. at 1357-1358.

Abram's claims of retaliation and race discrimination during the course of his employment arise from disciplinary decisions made by Stuart as Abram's supervisor. Contrary to Abram's assertion that "Stuart has not provided any evidence … that he

had discretion in recommending termination of employees," (doc. 28 at 8), Stuart's uncontradicted testimony establishes that, as a supervisor, Stuart had the discretion to discipline employees for various infractions, including violation of work rules. The undisputed evidence therefore establishes that in disciplining Abram following the December 15 incident and suggesting to Kilgore that Abram be terminated, Stuart was acting within his discretionary authority.

Defendant Stuart having established his eligibility for qualified immunity, the burden shifts to Abram to show that qualified immunity is not appropriate under the two-part test set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Cottone*, 326 F.3d at 1358,"The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If, under the plaintiff's allegations, the defendants would have violated a constitutional right, 'the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

    1.    Constitutional Violation

Abram alleges that Stuart violated his right to be free from race based employment discrimination. As previously mentioned, to establish intentional discrimination based on retaliation, Abram must show that the defendant committed

the adverse employment action or contributed to the adverse employment action. As the Court has already concluded, Plaintiff Abram has failed to demonstrate that Stuart's actions, even if improperly motivated, contributed to Kilgore's decision to terminate Abram. As such, Defendant Stuart's actions did not violate Plaintiff Abram's constitutional rights. For this reason, Stuart is also entitled to summary judgment based on qualified immunity and the Court need not examine whether the right was clearly established.

V.   Conclusion.

For the reasons stated above, Defendants' respective motions for summary judgment are due to be **GRANTED** in all respects. A separate order in conformity with this opinion will be entered.

**DONE** this 3rd day of February, 2006.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　**VIRGINIA EMERSON HOPKINS**
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge